## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ALBERT RAY, PATRICIA LAUDATI, and
ERASMO CARMONA,

*Plaintiffs*,

v.

ALLISON BLAKE,
in her official capacity as the Commissioner of
the State of New Jersey, Department of Children and
Families

*Defendant.*

Civil Action No.: 14-cv-3824 (PGS)

**MEMORANDUM AND
ORDER**

This matter is before the Court on a motion for summary judgment brought by Plaintiffs Erasmo Carmona, Patricia Laudati, Albert Ray (ECF No. 62) and a cross-motion for summary judgment brought by Defendant, Allison Blake, Commissioner of the State of New Jersey's Department of Children and Families ("DCF") (ECF No. 63).

I.

Plaintiffs are elementary and middle school teachers who complain that Defendant DCF investigated an alleged child abuse claim[1] and that, as a result of the investigation, DCF made a "not established" finding. This means that no child abuse was found, but the teacher was found to have harmed or placed a child at a risk of harm (herein referred to as "harm provision"). According to the Code of Ethics of the Education Profession, an educator "believes in the worth and dignity of each human being" and "shall make reasonable effort to protect the student from conditions

---

[1] There is a unit within DCF known as the Institutional Abuse Investigation Unit (IAIU) which investigates allegations of child abuse in and out-of-home settings such as schools. In this Memorandum, I refer only to DCF.

harmful to learning or to health and safety." Here, to accuse a teacher with creating a risk of harm to a student is a serious accusation which Plaintiffs allege injures their reputation. Each teacher seeks a due process hearing under the Fourteenth Amendment in order to defend their name. Each teacher asserts that DCF acted arbitrarily in determining the child abuse claim were "not established;" and that DCF permanently keeps a record(s) which contains a "not established" finding. Such reports can be disclosed to certain categories of persons. At this time, there is no protocol established by regulation to prevent disclosure of such a findings report from occurring.

Since the eighties, there have been federal and state laws as well as government programs to monitor and combat child abuse and neglect. 42 U.S.C.A. § 5104. This includes federal grants to the states for child abuse and neglect prevention programs. 42 U.S.C.A. § 5106a. Such grants were awarded to implement risk and safety assessment protocols in order to protect children and to conduct investigations. 42 U.S.C.A. §5106a(a)(4)(14). In order to manage the child abuse issue, the prevalence of child abuse occurrences had to be determined. As such, the federal government requires that each state account for the number of children reported to it as victims of child abuse and neglect; and the state must also note the number of those claims that, after investigation of the claim, were substantiated, unsubstantiated or determined to be false. 42 U.S.C.A. § 5106a(d)(1)(2).

In order to accomplish the accounting as well as to oversee regulatory operations in New Jersey, DCF is authorized to investigate complaints about child abuse "for the protection of children under 18 . . . who have had serious injury inflicted upon them by other than accidental means." N.J.S.A. 9:6-8.8(a). Under this law, the "safety of the children served shall be of paramount concern." *Id.* It "is the intent of this legislation to assure that the lives of innocent children are immediately safeguarded from further injury and possible death and that the legal

rights of such children are fully protected." *Id. See also DYFS v. A.L.*, 213 N.J. 1 (2013); *DYFS v. I.S.*, 214 N.J. 8, cert. denied, 134 S. Ct. 529 (2013).

The statutory scheme defines a child as abused or neglected where a parent or guardian (a) inflicts physical injury that creates a substantial risk of death, disfigurement or impairment of physical or emotional health; (b) creates a substantial or ongoing risk of physical injury to a child other than accidental means; (c) sexually abuses a child; and (d) places a child in imminent dangers of becoming impaired due to failure to exercise a minimum degree of care. N.J.S.A. 9:6-8.9. The statutory scheme also provides that when the investigator finds there is a substantiated finding of child abuse, a hearing will be held and thereafter, if substantiated, the accused will be entered on the child abuse registry. N.J.S.A. 9:6-8.10. Lastly, the statute indicates that the records of the investigation shall be kept confidential, but thereafter itemizes 23 categories of agencies and private entities to whom disclosure may be made under certain circumstances. N.J.S.A. 9:6-8.10(a).

Pursuant to those statutory mandates, DCF promulgated regulations setting forth the process for undertaking a child protection investigation. N.J.A.C. 3A:10-4.1. More specifically, the regulations detail what steps an investigator must employ in conducting an investigation, such as interviewing the alleged child victim, the caregiver, the reporter of the conduct, etc. *Id.* The investigator may seize evidence such as clothing, and may photograph the scene during the investigation. N.J.A.C. 3A:10-43. The investigator may refer the case to the prosecutor or seek law enforcement assistance. N.J.A.C. 3A:10-5.1, 5.4. And finally, the investigator may seek emergency placement of an abused child. N.J.A.C. 3A:10-6.2.

Although the role of the investigator is very specific in the regulatory scheme, often the facts ascertained during an investigation do not clearly support a finding that child abuse occurred.

As such, federal and state law provide for the expungement of records of an individual accused of child abuse, where the child abuse claim was determined to be unfounded. 42 U.S.C.A. § 5106a(b)(2)(A)(xii); N.J.S.A. 9:6-8.40a.

Previously, DCF investigators would classify the conduct of alleged child abuse or neglect as either substantiated or unfounded. If the conduct was substantiated, the accused was subject to a hearing, and the identity of that person was placed on the child abuse registry. If the conduct was unfounded, the identity of the accused would not be placed on the child abuse registry, and, generally, the record could be expunged within three years. Over years of experience, DCF investigators found that the categories of "substantiated" and "unfounded" did not adequately address the range of conduct investigated. Obviously there is a "large gap between abuse and proper behavior," that was not addressed by the categories previously set in place. *See In re A.I.*, 393 N.J. Super. 114, 124, 922 A.2d 817, 823, fn. 3 (App. Div. 2007). The new regulation adopted by DCF appear to have sought bridging this gap by amending the types of findings that an investigator may use to categorize allegations of child abuse. That is, DCF adopted a four-tier framework. N.J.A.C. 3A:10-7.3(c). DCF explained in its rule proposal that "redefining the current investigative findings of 'substantiated' and 'unfounded' and adding two intermediary investigative findings of 'established' and 'not established'" would

> allow the investigative findings and records to better reflect the circumstances of an investigation. The inclusion of the "established" finding in addition to the existing "substantiated" finding will allow the Division to distinguish incidents of abuse and neglect that are of sufficient concern that the incidents would necessitate a Child Abuse Record Information [CARI] disclosure. Lastly, when a finding is determined to be "unfounded" such records are expunged from the Division's records; the inclusion of the "not established" finding will allow the Division to retain records where a child is found to have been harmed or placed at risk of harm. This will allow the Division to have a better and more comprehensive understanding

of a family should additional referrals be received by the Division in the future.

[44 N.J.R. 357(a) (Feb. 21, 2012).]

The definition of the four categories of incidents including the two new intermediary investigative findings were adopted by regulation (N.J.A.C. 3A:10-7.3(c)):

> (c)  For each allegation, the Department representative shall make a finding that an allegation is "substantiated," "established," "not established," or "unfounded."
>
> 1.  An allegation shall be "substantiated" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21 and either the investigation indicates the existence of any of the circumstances in N.J.A.C. 3A:10-7.4 or substantiation is warranted based on consideration of the aggravating and mitigating factors listed in N.J.A.C. 3A:10-7.5.
>
> 2.  An allegation shall be "established" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21, but the act or acts committed or omitted do not warrant a finding of "substantiated" as defined in (c)1 above.
>
> 3.  An allegation shall be "not established" if there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm.
>
> 4.  An allegation shall be "unfounded" if there is not a preponderance of the evidence indicating that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, and the evidence indicates that a child was not harmed or placed at risk of harm.

Upon completion of an investigation, the investigator categorizes the conduct into one of the four. A finding of "established" or "substantiated" constitutes a determination that a child was abused or neglected. N.J.A.C. 3A:10-7.3(d).  After a hearing which affirms the investigator's category, such a finding may be entered on the Child Abuse Registry. N.J.A.C. 3A:10-7.6(c)(27).  The Registry is a "report of all information regarding child abuse or neglect accessible to the public." N.J.S.A. 9:6-8.11.  A DCF employee may disclose the identity of such an individual who is set forth in the registry under certain circumstances. N.J.A.C. 3A:10-7.7(a).  The disclosure is limited.

"The legislature requires the Department to forward all reports of substantiated findings to the Child Abuse Registry." N.J.S.A. 9:6-8.l0a. Such records are "to be kept confidential," except if disclosure is "authorized under subsections (B), (C), (D), (E), (F) and (G) of the statute." N.J.S.A. 9:6-8.l0a. These subsections permit disclosure under certain circumstances. Subsection (B) lists 23 types of governmental bodies, individuals and organizations to whom DCF may release child abuse information. Of the 23, one exception (13) allows "any person or entity mandated to consider child abuse or neglect information when conducting a background check or employment related screening to access the report." N.J.S.A.9:6-8.l0a(b) (13). So if a teacher wishes to volunteer as a little league coach or as a Girl Scout leader, arguably, his or her record may be subject to disclosure under this exception. In addition, if a teacher sought a new teaching position in a different school district, the report may also be disclosed to any prospective employer investigating the teacher's background. Moreover, another exception, (14), provides that "any person conducting a disciplinary, administrative or judicial proceeding to determine the terms of employment or continued employment," may access the record. So, exception (14) may also subject a teacher to ongoing disclosure to any school administrator, school board, licensing board, or others who may have some control over terms of employment. On the other hand, the statute also authorizes the Department to deny access to authorized persons if such access would "compromise the integrity of the Department investigation," or would "likely endanger" the well-being of any child once the teacher is listed on the Child Abuse Registry. There is no mechanism to prevent disclosure. N.J.S.A.9:6-8.10a(e). In its brief, DCF suggests that the identity on the Child Abuse Registry is not as broad as described above, but it may be disclosed in response to a Child Abuse Registry Investigation Check (CARI check); and DCF acknowledges that a CARI check is authorized:

> under limited circumstances. N.J.S.A. 9:6-8.11; N.J.A.C. 3A:10-7.6(c)(2) and -7.7. The following persons are subject to CARI

checks: Child Care Center Employees – N.J.S.A. 30:5B-6.2; Resource Parent applications – N.J.S.A. 30:4C-27.7; Kinship Legal Guardians – N.J.S.A. 30:4C-86; DCF/Division of Developmental Disabilities (DDD) Residential Center Employees – N.J.S.A. 30:4C-27.22; Registered Family Child Care providers – N.J.S.A. 30:5B-25.3; Division of Family Development (DFD) Approved Homes – N.J.S.A. 30:5B-32; Professional Guardians for the Elderly – N.J.S.A. 9:6-8.10e; Persons assuming care for children of incarcerated parents – N.J.S.A. 9:6-8-10c; Adoption Agency Employees – N.J.S.A. – 9:3-40.8; Prospective Court-Appointed Special Advocate (CASA) volunteers – N.J.S.A. – 2A:4A-92(d)(2); Adoptive parents (private or DCF) - N.J.S.A. 9:3-54.2; DCF employees; and Juvenile Justice Commission employees – Prison Rape Elimination Act (PREA) – 42 U.S.C. 15601; 28 CFR 115.317; N.J.S.A. 9:6-8.10a(b)(20).

(ECF 63-1 at 9, n.2). The problem which arises is that for substantiated or established cases, the accused has a right to a hearing in order to dispute such a finding; and if the claim is unfounded, the accused is not placed on the Child Abuse Registry, and the record is usually expunged after three years (N.J.A.C. 3A:10-7.7(b); N.J.A.C. 3A:10-8). However, if an investigator finds certain conduct to be "not established," DCF maintains a record for an unlimited period of time, and there are no established means or procedures for an accused teacher to dispute the findings.

In reviewing the category of "not established," Plaintiff teachers complain that the Findings Report of the investigator are arbitrary; and they should have a right to a hearing or have some method to defend themselves against such a finding that a "child was harmed or was placed at risk of harm." (ECF 62-8 at 6). To the contrary, DCF argues that a "not established" finding is insignificant, since the record is not placed on the Child Abuse Registry, and is not readily available to the general public. Therefore, DCF concludes that the "not established" finding does not rise to the level where due process rights must be afforded to a teacher. N.J.A.C. 3A:10-7.6(c)(2). (ECF 63-1 at 30-32).

II.

Both parties submitted Statements of Undisputed Facts in support of their motions, which included the Findings Report of DCF on each Plaintiff teacher for each investigation. Those Findings Reports are part of the record which DCF maintains. Each of the Plaintiff teachers were investigated by a DCF investigator as a result of an incident with a child, and each received a "not established" finding as a result of the investigation. That is, the DCF investigator could not find by a preponderance of the evidence that the teachers abused or neglected a child, however, there is an implication that the child was harmed or placed at a risk of harm by the teacher's actions. DCF then memorialized its findings in a Findings Report which was communicated to the school district, and DCF maintained a permanent record of the findings. DCF's submitted statement of undisputed facts does not include any facts about the procedure and safeguards it maintains for "not established" Findings Reports. Each teacher is discussed below:

**Patricia Laudati**

On or about January 30, 2014, the DCF commenced an investigation into allegations of child abuse and neglect against Plaintiff Patricia Laudati, an elementary school teacher at the Walter C. Black Elementary School in East Windsor, New Jersey. (Second Amended Complaint at ¶20; ECF 37). She had been teaching for approximately 40 years when the incident occurred. (ECF 62-6 at 46:1-24; 49:2-8). According to the Findings Report from DCF, Ms. Laudati "knocked on the top of a [child's] head three times," and her conduct was categorized as "not established." (ECF 62-3 at 1). The Findings Report dated February 25, 2014 is a letter to Ms. Laudati from the DCF investigator. This letter was also forwarded to the superintendent of the school district. (ECF 62-3). The Findings Report has several major points.

1)     The Findings Report sets forth the DCF's authority to investigate allegations of child abuse and neglect (ECF 62-3 at 1);

2)     The DCF investigator found the "Physical Abuse/Substantial Risk of Physical Injury Environment Injurious to Health and Welfare [of a child] is not established" (*Id.*);

3)     The Findings Report notes that "no adjudicative findings have been made," and DCF's role is "solely investigatory"; and "not established" findings are not disclosed in a child abuse registry check (CARI) but are maintained in agency records (*Id.*);

4)     The Findings Report incorrectly defines "not established" as one where "there is no preponderance of evidence that the child was abused or neglected as defined in N.J.S.A. 9:6-8.21" but it fails to complete the regulatory definition of not established with the clause -- "the evidence indicates the child was harmed or placed at risk of harm." (*Id.*).

5)     The "investigative observation" section of the Findings Report consisted of interviews of students, one of which corroborated the alleged victims account while others did not (ECF 62-3 at 1-2). This section also mentions that Ms. Laudati "denied that this incident occurred" during her interview. Ultimately the investigator found that "[b]ased upon the interviews and physical observations of [the child] she was not abused."

6)     The report notes that "appropriate licensing or supervisory authority may take additional action as a result of the investigation"; and the confidentiality statement indicates limited disclosure may be made. (ECF 62-3 at 2). The confidentiality statement reads:

> Please be advised that the results of the Department's investigation, including identifying Information, are maintained in the Department's files and can only be disclosed as set forth in N.J.SA 9:6-8.l0a. In accordance with the statute, however, we can release the findings report to administration to help ensure that proper care,

treatment or supervision is provided, not only to the specific child or children involved here but to all children under the care and supervision of the above referenced facility. These reports may be used by any person or entity conducting a disciplinary, administrative or judicial proceeding to determine terms of employment of an officer, employee or volunteer with an agency or organization providing services to children.

Also be advised that pursuant to this statute, the Department is required to forward to the police or law enforcement agency certain identifying information regarding all substantiated incidents of child abuse and neglect, including the identity of persons alleged to have committed child abuse or neglect and of victims of child abuse or neglect.

(*Id.*). The above confidentiality statement refers to a statute (N.J.S.A. 9:6-8.10a), which allows the disclosure of information about an accuser who is placed on the Child Abuse Registry (see discussion on p. 5-7). Since only substantiated or established reports are placed on the said registry, this statement infers that that DCF may disclose a "not established" finding on a CARI check. Similarly, in the last paragraph, it infers that DCF may disclose the report to law enforcement regarding "all substantiated claims," but here there is not such finding. The content of the confidentiality statement raises concerns that DCF may disclose such information to the 23 categories of recipients under N.J.S.A. 9:6-8.10a, despite statutes to the contrary. Obviously, the Findings Report must be disclosed to the teacher's present school district and to the police, if they were contacted previously, but the confidentiality statement does not limit disclosure in that fashion.

The Findings Report is also troubling because only a portion of the definition of "not established" is set forth in the Findings Report. Without the full definition, one is uncertain whether the investigator considered the harm provision as a whole. There is also no reason articulated in the Findings Report why or how Ms. Laudati harmed or placed a child at a risk of harm. Similarly

the Findings Report does not set forth any standards or factors to determine what type of conduct constitutes "not established." For example, the regulations list a host of factors to be considered in determining a finding of "substantiated" or "established." (N.J.A.C. 3A:10-7.5); but there is no such guideline concerning the harm provision. Due to the lack of the full definition of "not established" and the failure to articulate a reason why the child was harmed or placed at a risk of harm, the investigator's conclusion seems arbitrary— more like a hunch than a professional determination.

## Albert Ray

Plaintiff Albert Ray, is a middle school teacher in New Brunswick. (SAC at ¶8; ECF 37). DCF investigated Mr. Ray for an incident occurred in May 2013 wherein DCF found that the incident was "not established." (ECF 62-2 at 1). A student complained that Mr. Ray bruised his rib. (*Id.*) Mr. Ray indicated that he pushed the student because the student's hands were on his chest. (*Id.*) Mr. Ray was placed on administrative leave while an investigation into the incident was undertaken by the DCF investigator. (ECF 62-2 at 2). The DCF investigator's Findings Report (Exhibit B) was forwarded to Mr. Kaplan, the Superintendent. (ECF 62-2 at 1, 4). The Findings Report concluded in pertinent part:

1)      The DCF investigator found the "Physical Abuse/Substantial Risk of Physical Injury Environment Injurious to Health and Welfare of the Child is not established." (ECF 62-2 at 1).

2)      The Findings Report noted this "not established" finding is not disclosed in a child abuse registry information check; but the record is maintained by DCF. (ECF 62-2 at 1). Furthermore, within the Confidentiality Statement, (*see* ECF 62-2 at 4), it states that the documents can be disclosed pursuant to N.J.S.A. 9:6-8.10(a);

3)      Within the investigative observation section, no bruises were found on the child by the school nurse. (ECF 62-2 at 1).

The Findings Report noted the child attempted to push past Mr. Ray as the child attempted to leave the room, but the child alleges Mr. Ray pushed him twice, causing the child to fall. (*Id.*) Ray confirmed that he did make physical contact with the child "but reported that it was only to move [the child's] hands away from his chest area," and did so in response to the child pushing him. The Findings Report concluded that, "[b]ased on the information obtained and the physical observations of the child, [the child] is not an abused child. "however . . . [the child] was placed at risk of harm by virtue of the incident." (ECF 62-2 at 2);

4)      Within the recommendations section, Superintendent Kaplan was invited to supplement the record; but there is nothing within this Findings Report or in the regulation that affords Mr. Ray the right to refute any additional information that is submitted. (ECF 62-2 at 4);

5)      Under the "additional observations" section, it narrates that several students who were interviewed complained that Mr. Ray prevented them from leaving the room at dismissal, causing them to miss their buses (ECF 62-2 at 2). It is unknown whether Mr. Ray had the right to refute this additional charge or whether this information was relevant to the findings of the investigator.

**Erasmo Carmona**

Plaintiff Erasmo Carmona was subject to two separate investigations. Mr. Carmona is an elementary school teacher in New Brunswick, New Jersey. On or about October 28, 2014, DCF commenced an investigation into allegations of abuse and neglect against him. In the first incident,

a student playfully hit Mr. Carmona on the head, and Mr. Carmona reacted by grabbing the child in the neck and cheek area. (Exh. A, ECF 62-4). In content of this Findings Report, the investigator found that the physical abuse/substantial risk of physical environment injurious to health and welfare of the child is "not established." (ECF 62-4 at 3). The Findings Report is similar to those of Ms. Laudati and Mr. Ray, but it has an additional observation section. Within that section, there are different complaints enumerated about Mr. Carmona that are not related to the child abuse claim including (1) he used a racial slur to describe a child; (2) he grabbed a child by the shoulders on two occasions; and 3) he grabbed a staff members' hand to admire her nails. (ECF 62-4 at 4). From reading the Findings Report, it does not appear that Mr. Carmona had notice of these three additional allegations, nor did he have an opportunity to rebut those allegations. Of particular concern is whether the investigator considered these additional findings in making the "not established" determination on the child abuse claim.

In the second incident of Mr. Carmona, Mr. Carmona was accused of organizing a game at gym class, where all the students threw balls at one student. (ECF 62-4 at 6). The student had a faint red mark on his cheek. (*Id.*) The DCF's investigator found that the physical abuse/substantial risk of physical injury environment injurious to health and welfare of a child as "not established." (ECF 62-4 at 6). The content of the DCF's Findings Report is similar to the ones detailed above; but there is an additional comments section wherein one statement is of no relevance to the child abuse claim. Therein it states:

> During the course of the investigation, it was reported that para-professional Lissette Ruiz and Private Nurse Roseline Innocent fall asleep/doze off during gym class.

(ECF 62-4 at 7). This comment does not address the child abuse accusation, and is not relevant to Carmona's conduct. The Findings Report does not state whether this comment impacted the

investigator's evaluation. In the investigative observations section of this Findings Report, the investigation concluded that "[b]ased upon the information gathered and the physical observations of the child, [the child] is not a physically abused child as defined by the statute." Further, it states "the [DCF's] findings have not been adjudicated and should not be considered binding or conclusive. No determination as to the accuracy of the allegations, statements or accounts of the incident has been made."

As a result of this Findings Report and other conduct over a period of time, the school board conducted a hearing and withheld Mr. Carmona's annual salary increment due to "inappropriate behavior toward students" during a three year period. (*Id.*)

III.

In addition to the previously mentioned due process argument, DCF argues that the Plaintiffs have no injury, and therefore no damages can be awarded. (ECF 63-1 at 34). The proofs evidencing injury or damages are vague.   For example, Ms. Laudati states that she was "devastated" by the finding that she harmed or placed a child at risk of harm. (ECF 62-6 at 46:1-24; 49:2-8). She claims that the finding constructively required her to retire three years earlier than she wished. At her deposition she stated:

> A:     I have been greatly harmed by the actions of DOF.
>
> Q:     And. how is that?
>
> Q.     And how is that?
>
> A.     I retired prematurely. It had always been my intention to work until was 67. At the time of this incident, I was in my 31st year of teaching.   I was turning 64 that summer. I am, and was at the time, in perfect health. I had the highest of evaluations that I was highly effective in the classroom. My district did not put one letter - - after the event, did not put one letter in my file or discipline me.  I had intended to work until 67.  That would have given me three more years in my pension and Social Security. I have taught for 42 years,

with an unblemished record, with three New Jersey Governor Teacher State Awards - it's very unusual to have three - over a 30-year period. It so devastated me that this finding would state that I had a child harmed or at risk of harm, as defined by that unestablished finding, that I could not bear to continue teaching.

. . . . And to have any paper anywhere that states I put a child—I harmed a child or put a child at risk of harm greatly offends my integrity and casts a very definitive shadow over my retirement. I did not retire with pleasure. I retired with a broken heart.

(*Id.*).

Ray's alleged injury is that the "not established" finding, is a constant distraction, and he is unable to concentrate on his work as intensely as he had before the Findings Report. At his deposition, he stated:

Q:    Okay. You said that you were unable to concentrate on your work subsequent to the incident in this case, is that correct?

A:    Correct.

Q:    And can you explain what you meant by that?

A:    Well it was difficult in terms of because I do lesson planning, things of that nature, I have to work with the kids in class, sometimes one-on-one, sometimes I have to pull them out, meaning I take them out of the classroom to work on maybe study skills or reviewing for a test, so it was difficult to concentrate.

Q:    And what made it difficult to concentrate specifically?

A:    Again, the fact that my rights weren't being--my rights were being denied and the conclusion that [DCF] had came up with for the investigation that was going on at the time.

(ECF 62-7 at 27:5-23).

Mr. Carmona, on the other hand, supported DCF's findings because DCF correctly reported that the determinations were "not established," but he believes that the Superintendent's decision to withhold his salary was punitive. (SAC at ¶36, ECF 37; *see also* ECF 62-4 at 9-10).

None of the Plaintiffs argue that the potential disclosure of the findings report interfered or may interfere with future activities, such as seeking new employment or volunteering for some civic group.

IV.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to Aset forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor "that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

V.

In reviewing this matter, the Court finds guidance in recent decisions by the Superior Court of New Jersey, Appellate Division which addressed issues similar to the present one. In *Dep't of Children & Families v. D.B.*, 443 N.J. Super. 431 (App. Div. 2015), the Appellate Division reviewed whether the "not established" Findings Report of two teachers violated due process because the teacher was not given an opportunity to defend. In the first instance, Defendant A.G., a teacher's aid for an autistic child allegedly hit a five year old child numerous times on his arm with an open hand; and in the other, a six year-old child stated that Defendant D.B., an art teacher, allegedly grabbed his arm and scratched him a day before. *Id.* at 434-35. Due to many factors, both Defendants' conduct was categorized as "not established," but DCF maintained a permanent record. Consistent to previous decisions by the New Jersey court, the court in *D.B.* found that "if a statement that there were allegations that a child was harmed or put at risk of harm is included within the 'Investigative Observations' section of the letters, it must be followed by a disclaimer giving notice that there was no adjudicatory finding. The disclaimer must state "there has been no determination of the accuracy of the allegation." *Id.* at 446 (citation omitted).

Here, Plaintiffs find the disclaimer set forth in *D.B.* as unsatisfactory. As such, Plaintiffs' challenge the regulatory scheme for two main reasons: (1) lack of a hearing or opportunity to defend, and (2) reputational injury caused by the findings.

17

*a. Hearing*

New Jersey courts have held that a teacher has no right to a due process hearing to challenge

a "not established" finding because it is not of such a magnitude to warrant an evidentiary hearing.

Generally, the New Jersey Courts held:

> [A] teacher is not entitled to an adjudicatory hearing to challenge a finding that
> child abuse allegations are not substantiated, even when DYFS has expressed
> "concerns" about a teacher's conduct because such a finding is "intrinsically less
> damaging to reputation than a finding that child abuse charges have been
> 'substantiated.'" "A finding by DYFS that child abuse charges have not been
> substantiated, but that there is some indication a child was harmed or placed at risk
> of harm, is purely investigatory in nature, with none of the procedural protections
> of an adjudicatory proceeding."

*New Jersey Dep't of Children & Families' Institutional Abuse Investigation Unit v. S.P.*, 402 N.J.

*Super.* 255, 270, 953 A.2d 790, 799 *(App. Div. 2008). See also N.J. Div. of Child Prot. &*

*Permanency v. D.S.*, 2017 N.J. Super. Unpub. LEXIS 254,*8 (N.J. Super. Ct. App. Div. Feb. 2,

2017) (rejecting Defendants' contention that they were entitled to an evidentiary hearing so they

could prove they did not harm or place the child at risk because there was no finding that they did

so.) Moreover, the state court found that, even though due process protection extends to personal

reputation without requiring any other tangible loss, this does not mean that "a liberty interest is

implicated anytime a government agency transmits information that may impugn a person's

reputation." *D.B.,* 443 N.J. Super. at 443.

As the Appellate Division found in *D.B.,* under the New Jersey Constitution, "due process

is flexible and calls for such procedural protections as the particular situation demands. Thus, even

if a person has a constitutionally protected interest, it does not automatically follow that the person

must be afforded opportunity for an adjudicatory hearing." *Id.* at 443 (internal citation omitted).

This same standard applies under federal law. *Matthews v. Eldridge*, 424 U.S. 319 (1976) ("Due

process is flexible and allows for such procedural protections as the particular situation demands." (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Notwithstanding this, a certain level of flexibility should be maintained by allowing teachers some recourse to challenge the wording of the Findings Reports "to avoid an improper impression conveyed despite the ultimate finding that the charges were unfounded." *In re A.I.*, 393 N.J. 114, 131, 922 A.2d 817 (N.J. Super. Ct. App. Div. May 21, 2007). In *A.I.* the court held that "even though the section on "Investigative Findings" states that "[n]o adjudicative findings have been made ... the letter should also note that the [DCF]'s findings are not binding or conclusive." *Id.*

The Appellate Division in *S.P.* further emphasized the importance of allowing teachers to challenge the wording of investigative findings stating,

> A teacher against whom a finding has been made by DYFS expressing concern about the teacher's conduct "has a due process right to challenge the wording of such a finding on the ground that it is misleading and unfairly damaging to his reputation." "The impact upon a teacher's reputation of a finding by DYFS expressing concern about the teacher's conduct may be significant, especially if it is accompanied by what appears to be an affirmative finding by DYFS that a teacher has had improper physical contact with a student." "The investigatory findings and 'concerns about the teacher's conduct,' warrant 'some due process protection' by 'judicial review and correction [of the findings] to curb administrative abuses.'"

*New Jersey Dep't of Children & Families' Institutional Abuse Investigation Unit v. S.P.*, 402 N.J. Super. 255, 270, 953 A.2d 790, 799 (App. Div. 2008).

In this case, the investigators note within the Findings Reports that none of the alleged findings have been adjudicated; but based on my common experience, like other records maintained by State government, the recipient of the Findings Report will give the Findings Report some credibility, and most likely the recipient will consider it in his/her decision making. Commons sense dictates that any recipient of a Findings Report with a "not established"

assessment will infer that there was some level of improper conduct, and as a result, he/she will react negatively to that teacher. As such, the language of the current disclaimer may not be sufficient to protect the interest of the teachers. The Findings Reports also do not mention the accuracy of the allegations, as mentioned in the *D.B.* opinion; and the reports do not provide the teachers with an opportunity to challenge the wording or the scope of the Findings Reports prior to its distribution. Also, it is unclear whether any standardized procedure was followed in gathering the information contained in the Findings Reports.

In conclusion, based on the arbitrariness of the Findings Reports, an additional due process safeguard must be observed beyond the content of the disclaimer set forth in *D.B.*. That is:

1)      The Findings Report must obviously and conspicuously state that the findings are only investigatory, and have not been adjudicated; and that there has been no determination as to the accuracy of the allegations.

2)      Here, the reports included a disclaimer in the text, but the disclaimer is not conspicuous, not directly communicated to the recipient and did not clearly stress the subjectivity of these reports. To remedy same, the disclaimer must be set forth in the header of each page of the report, and/or in a separate cover sheet to the recipient.

3)      In light of the extraneous comments, and omission of facts that support the conclusion of the Findings Reports, the Court finds that each Findings Report should be distributed to the teachers.

4)      The teachers should have the right to comment and/or object to the Findings Report.

5)      The teacher's objection should be attached to the Findings Report.

6)      A supervisory review is to be conducted to review the veracity and relevance of the findings. The purpose of this step is to remove all irrelevant and extraneous information from the

Findings Report, such as the identity of the teachers who are "dozing off", or grabbing the hand of a coworker to admire her nails.

In addition to the protocols addressed above, the Court finds the following additional remedies for each Plaintiff.

### Patricia Laudati

In the case of Ms. Laudati, the Findings Report dated February 5, 2014 (ECF No. 62-2) is arbitrary for the following reasons:

1)    It fails to set forth any facts to support that the child was "harmed or placed at the risk of harm".

2)    It fails to properly define "not established". By omitting the harm provision, it is uncertain whether the investigator considered the entire definition.

3)    Ms. Laudati taught in good standing for about 42 years; and it is hard to understand why that was not considered.

As such, the remedy is that the Findings Report as to Patricia Laudati dated February 4, 2014 (ECF No. 62-2) should be revoked, and/or found to be "unfounded."

### Albert Ray

In the case of Mr. Ray, the Findings Report is also arbitrary for the following reasons:

1)    In the Findings Report dated July 12, 2013, the "Additional Observations" section (ECF No. 62-2) states that "several students reported that Mr. Ray would not allow them to leave the room at dismissal causing some of them to miss their bus." This comment is not relevant to the child abuse claim; and it is unknown if the investigator considered same in his or her determination of "not established."

2)     The Findings Report offers the opportunity to the School's superintendent to supplement the Findings Report. Mr. Ray is not afforded such an opportunity. A teacher should have the same right to supplement or rebut the Findings Report.

As such, the remedy is that the statement set forth in the July 12, 2013 Findings Report, "Additional Observations" section (ECF No. 62-2) (paragraph 1 above) should be redacted and the investigator should reassess her findings. In addition, Mr. Ray should be given an opportunity to rebut the findings. Lastly, a supervisory review must be conducted to assure veracity and relevance of the Findings Report.

**Erasmo Carmona**

Mr. Carmona is subject to Findings Reports which are arbitrary for the following reasons:

1)     In the first Findings Report dated December 23, 2014, the "Additional Observation" section (Ex. A to ECF No. 62-4) states that: (a) "A staff and an administrator reported that Mr. Carmona called a student of African descent a racial slur"; (b) "Another student said Mr. Carmona grabbed [a child] by the shoulder on two occasions to put them in time out"; and (c) An administrator reported that "a staff member stated that Mr. Carmona grabbed her hand and admired her nails which made her feel uncomfortable." The relevance of these comments to the child abuse claim is questionable; and one cannot determine if the investigator gave these comments significant consideration in determining "not established."

2)     In the second Findings Report dated February 4, 2016, the "Additional Observation" section (Ex. B to ECF no. 62-4) states that "[d]uring the course of the investigation, it was reported that para-professional Lissette Ruiz and Private Nurse Roseline Innocent fall asleep/doze off during gym class". This comment does not directly relate to the child abuse claim; and there is no correlation of how this observation impacts the conduct of Mr. Carmona.

As such, the reasonable remedy is that the three comments in the "Additional Observation" section (Ex. A to ECF No. 62-4) (paragraph 1 above) should be redacted, and the investigator should reassess the Findings Report. With regard to the "Additional Observation" section (Ex. B to ECF no. 62-4) (paragraph 2 above), the comment should also be redacted and the investigator should reassess the Findings Report. Mr. Carmona should be given an opportunity to rebut each Findings Report. In addition, a supervisory review must be conducted to assure the veracity and relevance of the Findings Reports.

Based on the above findings, Plaintiff's motion for summary judgment is denied in part, and granted in part. Defendant's cross-motion for summary judgment is denied.

ORDER

This matter having come before the Court on Plaintiffs' motion for summary judgment (ECF No. 62) and Defendant's cross-motion for summary judgment (ECF No. 63) and for the reasons set forth above, and for good cause having been shown;

IT IS on this 12th day of April, 2018;

ORDERED that Plaintiff's motion for summary judgment is granted in part and denied in part; and it is further,

ORDERED that the February 25, 2014 Findings Report as to Patricia Laudati (ECF 62-3) is revoked, and/or found to be "unfounded;" and it is further

ORDERED that as to the July 12, 2013 Findings Report of Albert Ray, (ECF No. 62-2) the statement in the "Additional Observations" section is to be redacted and the investigator should reassess her findings. In addition, Mr. Ray should be given an opportunity to rebut the Findings Report. A supervisory review must be conducted to assure veracity and relevance of the Findings Report; and it is further

ORDERED that as to the December 23, 2014 Findings Report of Erasmo Carmona (Ex. A to ECF No. 62-4), the "Additional Observations" section is to be redacted, and an investigator should reassess the Findings Report. Mr. Carmona should be given an opportunity to rebut the Findings Report. A supervisory review must be conducted to assure veracity and relevance of the Findings Report; and it is further

ORDERED that as to the February 4, 2017 Findings Report of Erasmo Carmona (Ex. B to ECF No. 62-4), the "Additional Observations" section is to be redacted, and investigator should reassess the Findings Report. In addition, Mr. Carmona should be given an opportunity to rebut the Findings Report. A supervisory review must be conducted to assure veracity and relevance of the Findings Report; and it is further

ORDERED that Plaintiffs' and Defendant's counsel shall confer, and submit a conspicuous disclaimer to be inserted on the Findings Reports of Plaintiffs Albert Ray and Erason Carmona, or alternatively, included in the cover page if and when a Findings Report is forwarded to a third party recipient; and it is further

ORDERED that Defendant, Allison Blake, Commissioner of the State of New Jersey's Department of Children and Families Cross-Motion (ECF No. 63) is denied.


_____
PETER G. SHERIDAN, U.S.D.J.